USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                                        :
TRUSTEES OF THE NEW YORK CITY DISTRICT :
COUNCIL OF CARPENTERS PENSION FUND,    :
WELFARE FUND, ANNUITY FUND, and        :            1:19-cv-07592-GHW
APPRENTICESHIP, JOURNEYMAN             :
RETRAINING, EDUCATIONAL AND INDUSTRY :            MEMORANDUM OPINION
FUND, TRUSTEES OF THE NEW YORK CITY    :              AND ORDER
CARPENTERS RELIEF AND CHARITY FUND,    :
THE NEW YORK CITY AND VICINITY         :
CARPENTERS LABOR-MANAGEMENT            :
CORPORATION, and the                   :
NEW YORK CITY DISTRICT COUNCIL OF      :
CARPENTERS,                            :
                                       :
                           Petitioners, :
                                       :
                 -against-             :
                                       :
PRIME CONTRACTORS INC.,                :
                                       :
                           Respondent. :
                                       :
------------------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare

Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund;

the Trustees of the New York City Carpenters Relief and Charity Fund; the New York City and

Vicinity Carpenters Labor Management Corporation (together, the "Funds"); and the New York

City District Council of Carpenters (the "Union," and collectively with the Funds, the "Petitioners")

seek to confirm an arbitration award obtained against Prime Contractors, Inc. ("Prime Contractors"

or "Respondent") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185. For the following reasons, the award is confirmed.

## I.  BACKGROUND

Beginning in August 2017, Prime Contractors executed three affidavits binding it to the "Project Labor Agreement Covering Specified Renovation and Rehabilitation of New York City Housing Authority Buildings and Structures" between the New York City Housing Authority and the Building and Construction Trades Council of Greater New York and Vicinity (the "NYCHA PLA").  Declaration of William Davidian, Dkt. No. 11 ("Davidian Decl."), at ¶ 9.  Likewise, since March 2018, Prime Contractors executed two affidavits binding it to the "Project Labor Agreement Covering Specified Construction Work under the Capital Improvement Program for Fiscal Years 2015-2019" between the New York City School Construction Authority and the Building and Construction Trades Council of Greater New York and Vicinity (the "SCA PLA," and collectively with the NYCHA PLA, the "PLAs").  *Id.* at ¶ 8.  Through these PLAs, Prime Contractors became bound by various collective bargaining agreements involving the Union and, in relevant part, the Union's "Independent Building Construction Agreement" (the "CBA").  *Id.* at ¶ 10.  The CBA requires that Prime Contractors remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union.  *Id.* at ¶ 1; Ex. E, Art. XV § 1.  The CBA also bound Prime Contractors to the Funds' "Revised Statement of Policy for Collection of Employer Contributions" (the "Collection Policy").  *Id.* at ¶ 12; Ex. E, Art. XV § 3; Ex. F.

With respect to dispute resolution, the CBA provides that in the event that a "dispute or disagreement arise between the parties hereto . . . concerning any claim arising from payments to the Fund of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder . . . . Roger Maher, Ruth Raisfeld or Howard Edelman."  *Id.* at ¶ 13; Ex. E, Art. XV § 7.  The CBA also stipulates that "[i]n the event that proceedings are instituted before an arbitrator . . . to collect delinquent contributions to Benefit Fund or Funds, and if such arbitrator renders an award in favor of such Fund(s), the arbitrator shall

be empowered to award such interest, liquidated damages, and/or costs as may be applicable under this Agreement and Declaration of Trust establishing such Fund(s)." *Id.* at ¶ 14; Ex. E, Art. XV § 6(a)(6). Another CBA provision dictates that:

> In the event that formal proceedings are instituted before a court of competent jurisdiction by the trustees of a Benefit Fund or Funds to collect delinquent contributions to such Fund(s), and if such court renders a judgment in favor of such Fund(s), the Employer shall pay to such Fund(s), in accordance with the judgment of the court, and in lieu of any other liquidated damages, costs, attorney's fees and/or interest, the following:
> (1) the unpaid contributions; plus
> (2) interest on the unpaid contributions determined at the prime rate of Citibank plus 2%; plus
> (3) an amount equal to the greater of—
>     (a) the amount of the interest charges on the unpaid contributions as determined in above, or
>     (b) liquidated damages of 20% of the amount of the unpaid contributions; plus
> (4) reasonable attorney's fees and costs of the action; and
> (5) such other legal or equitable relief as the court deems appropriate.

*Id.* at ¶ 15; Ex. E, Art. XV § 6(a). Finally, the Collection Policy states that, "[a]ttorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts . . . ." *Id.* at ¶ 16; Ex. F, § V(6).

After Prime Contractors failed to remit interest accrued on its late payment of contributions to the Funds for the period August 27, 2017 through September 22, 2018, a dispute arose between the parties. *Id.* at ¶ 17. Pursuant to the CBA's arbitration clause, Petitioners initiated arbitration before one of the designated arbitrators, Roger Maher, who noticed a hearing in the matter for June 17, 2019 at 10:30 a.m. and mailed this notice to Prime Contractors by regular and certified mail. *Id.* at ¶ 18; Ex. G. The hearing proceeded as scheduled and the arbitrator thereafter rendered a written opinion dated June 26, 2019. *Id.* at ¶ 19; Ex. H. The arbitrator noted in this opinion that although proof was submitted that Prime Contractors had legally sufficient notice of the hearing and the claims against it, it failed to appear and failed to make any request for an adjournment or extension

of time to appear. *Id.* at Ex. H. The arbitrator found that the "uncontroverted testimony and evidence" established that Prime Contractors was bound by the CBA and was thus required to make certain payments to the Funds on behalf of all its carpenter employees. *Id.* If a payment was not made within fourteen days of the performance of the employees' work, the payment would be considered late, in which case the CBA authorized Petitioners to charge late payment interest in the amount of two basis points above the prime rate until payment was received. *Id.* Testimony established that an audit of Prime Contractors' late payment of fringe benefit contributions had been performed and delinquencies were discovered during the period August 27, 2017 through September 22, 2018, and that although a copy of the report of this audit had been forwarded to Prime Contractors accompanied with a demand for payment of the accrued late payment interest, Prime Contractors did not comply. *Id.* A copy of the audit report was also received into evidence, showing outstanding late payment interest in the amount of $4,566.51. *Id.* In addition to this amount, Petitioners requested the imposition of attorneys' fees, court costs, and the arbitrator's fee. *Id.* Finding that Prime Contractors had violated the CBA when it failed to remit interest on the late payments, the arbitrator awarded the requested relief and ordered Prime Contractors to pay the Funds a sum total of $8,390.48, consisting of: (1) the late payment interest of $4,566.51; (2) court costs of $400.00; (3) attorneys' fees of $2,923.97; and (4) the arbitrator's fee of $500.00. *Id.* The arbitrator also found that interest at the rate of 7.5% would accrue on the award from the date of its issuance. *Id.*

On August 14, 2019, Petitioners commenced the instant confirmation action, asserting that Prime Contractors had not satisfied any portion of the arbitration award. *See* Dkt. No. 1. The Court directed Petitioners to file any declarations and affidavits with which they intended to support their petition by September 20, 2019 and directed Prime Contractors to file any opposition by October 4, 2019. Dkt. No. 8. Petitioners filed their motion for summary judgment and supporting documents on September 10, 2019. Dkt. Nos. 10-13.

Petitioners served their petition, summons, and this Court's scheduling order, Dkt. No. 8, on Prime Contractors on August 19, 2019. Dkt. No. 9. Petitioners additionally served their motion for summary judgment on Prime Contractors on September 10, 2019. Dkt. No. 14. Despite being properly served with the petition and summons, Petitioners' motion for summary judgment, and the Court's order establishing deadlines for opposing that motion, Prime Contractors has not appeared in this action.

## II. DISCUSSION

### A. The Arbitration Award

"Section 301 of the [LMRA], 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421 (ENV) (RLM), 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

A court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Local 97, Int'l Bhd. of Elect. Workers v. Niagara*

5

*Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) ("Because [t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of [arbitration] awards, an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." (citation and internal quotation marks omitted)); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

Here, there is no indication that the arbitrator's award was procured through fraud or dishonesty or that the arbitrator was acting in disregard of the CBA or outside the scope of his broad authority to resolve any dispute between the parties regarding contributions. Rather, the record indicates that the arbitrator based his award on undisputed evidence that an audit of Prime Contractors' late payment of fringe benefit contributions required by the CBA revealed delinquencies during the period August 27, 2017 through September 22, 2018, and that although Petitioners made Prime Contractors aware of these delinquencies and demanded remittance of the accrued late payment interest authorized by the CBA, Prime Contractors failed to comply. The

record further indicates that the arbitrator based his award of the late payment interest, attorneys' fees, and costs on the provisions of the CBA and the Collection Policy to which Prime Contractors was bound, as well as undisputed testimony and evidence. Accordingly, Petitioners' motion is granted, and the award is confirmed.

### B. Post-Award Prejudgment Interest

Petitioners have also requested that the Court award prejudgment interest at the rate of 7.5%—the post-award rate prescribed by the arbitrator—for the period between the date of the award and the date of judgment in this action. Dkt. No. 1, at 7. The Second Circuit has noted that in the context of actions to confirm arbitral awards there is "a presumption in favor of prejudgment interest." *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984). Accordingly, district courts in this Circuit "have exercised their discretion to award prejudgment interest when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was 'final and binding.'" *Serv. Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs.*, LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004) (collecting cases). Moreover, the arbitrator has already awarded this interest. Davidian Decl., Ex. H at 3. Accordingly, this interest rate will be encompassed within the Court's confirmation of the arbitrator's award.

### C. Attorneys' Fees and Costs

Petitioners also request $3,869.00 in attorneys' fees and $91.45 in costs arising from this confirmation action. *See* Declaration of Nicole Marimon, Dkt. No. 12 ("Marimon Decl."), at ¶¶ 8-9. Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for the recovery of attorneys' fees. *Id.* However, "[p]ursuant to its inherent equitable powers . . . a court may award attorney's fees when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for

oppressive reasons.'" *Id.* (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). In the context of confirmation proceedings, "the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.* (quoting *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron, Div. of Textron, Inc.*, 688 F.2d 997, 999 (2d Cir. 1982)).

Here, an award of fees and costs is justified. By entering into the CBA, Prime Contractors agreed to submit to arbitration of disputes at the option of either party to the agreement. Prime Contractors failed to participate in the arbitration proceeding, despite having been duly notified of the hearing. Following the arbitrator's decision that Prime Contractors violated its obligations under the CBA, Prime Contractors failed to satisfy any portion of the award and has subsequently failed to oppose the instant petition to confirm the award. In so doing, Prime Contractors has failed to offer any justification for its refusal to abide by the decision of the arbitrator. *See, e.g.*, *E. Millenium Constr.*, 2003 WL 22773355, at *3 (awarding fees and costs where defendant "chose not to participate in the arbitration proceedings or even to oppose Plaintiffs' application for confirmation of the arbitration award"); *New York City Dist. Council of Carpenters v. Metro Furniture Servs. LLC*, No. 11-cv-7074 (HB), 2012 WL 4492384, at *4 (S.D.N.Y. Sept. 28, 2012) (awarding attorneys' fees and finding that respondent's "inaction in the arbitration hearings and in the present action . . . constitutes bad faith"). Moreover, the CBA includes a provision that allows the Funds to recover reasonable attorneys' fees and costs upon prevailing in a confirmation action. Davidian Decl., Ex. E, Art. XV § 6(a)(4). The Funds' Collection Policy further states that "[a]ttorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts" and that "[a]ll recoverable costs actually incurred in court or other legal actions for the collection of delinquent contributions . . . shall be assessed against the delinquent employer. *Id.* at Ex. F, § V(6)-(7). Therefore, allowing the Funds to recover reasonable attorneys' fees and costs in the current action aligns with the parties' contractual

8

expectations.  Finally, an award of attorneys' fees will further the federal policy in favor of settling labor disputes by arbitration.  *See Niagara Mohawk Power Corp.*, 196 F.3d at 124.

In support of their request for fees and costs, Petitioners submitted an invoice listing the completed tasks, attorneys' hourly rates, and billed hours, as well as their costs.  Marimon Decl., Ex I.  In total, Petitioners incurred 23.2 hours of legal work at the rates of $275.00/hour for the partner and associate attorneys, and $120.00/hour for legal assistants.  *Id.* at ¶¶ 4-6 & Ex. I.  Petitioners' costs consist of postage and process service fees.  *Id.* at Ex. I

The Court has reviewed these contemporaneous records and has determined that the amounts requested are reasonable.  Accordingly, Petitioners' request for attorneys' fees and costs is granted.

## III.    CONCLUSION

For the foregoing reasons, the Clerk of Court is directed to enter judgment in favor of Petitioners and against Prime Contractors in the amount of $12,350.93—which consists of the arbitration award of $8,390.48 plus $3,960.45 in attorneys' fees and costs incurred in the instant action—plus prejudgment interest on the arbitration award at the rate of 7.5% per annum from the date of the award (June 26, 2019) to the date of judgment.  Post-judgment interest will accrue pursuant to 28 U.S.C. § 1961.

The Clerk of Court is further directed to close this case.

SO ORDERED.

Dated: October 25, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge